# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# AIKEN DIVISION

| | | |
|---|---|---|
| Adrienne W. Saulsberry, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.: 1:16-cv-02792-JMC |
| | ) | |
| v. | ) | **ORDER AND OPINION** |
| | ) | |
| Savannah River Remediation, LLC | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the court for review of Defendant Savannah River Remediation, LLC's ("SRR") Motion in Limine to Bar Plaintiff from Making Adverse Comments Regarding Defendant's Failure to Produce Certain Records (ECF No. 91). In due consideration of all submissions, the applicable law, and for the reasons discussed below, the court **DENIES WITHOUT PREJUDICE** SRR's Motion in Limine to Bar Plaintiff from Making Adverse Comments Regarding Defendant's Failure to Produce Certain Records (ECF No. 91).

## I. PROCEDURAL AND FACTUAL BACKGROUND

This Title VII and § 1981 disparate treatment action was initially filed by Saulsberry on August 10, 2016. Having now ruled on SRR's Motion for Summary Judgment (ECF No. 90), the following claims remain before the court and are set for trial: Saulsberry's Title VII and § 1981 disparate treatment claims based upon (a) intentional race discrimination in failing to re-hire Saulsberry for the 2014 First Line Manager ("FLM") position; (b) retaliation against Saulsberry for filing a charge with the Equal Employment Opportunity Commission ("EEOC") in April 2014 and for filing a prior internal grievance with SRR, and (c) a failure to hire Saulsberry for any positions for which she was qualified in violation of SRR's preference policy (SRR's internal

1

policy section 3161).

*The Lash Investigation and the Missing Lash Investigation File*

Particularly pertinent to SRR's instant Motion in Limine (ECF No. 91), is Saulsberry's first 2013 *internal* EEO Complaint because that Complaint allegedly arose from Saulsberry's participation in the 2012 investigation of Robert Lash. Specifically, Saulsberry "contends that after she participated in the Lash investigation she was targeted by her managers and treated differently." (ECF No. 99 at 2.) As such, her 2013 *internal* EEO Complaint alleged that she was selected for the WFR because…[Saulsberry] previously oppos[ed] race discrimination in the workplace—in other words, participated in the Lash investigation. (ECF No. 61-10 at 1–3.). Precisely, around September 2012, Saulsberry participated in a workplace investigation regarding Robert Lash, a contract employee who allegedly made "inflammatory remarks" about President Barack Obama. (ECF No. 45-4 at 1–2.) Before the formal investigation commenced, on January 24, 2012, Saulsberry notified individuals within SRR about a document, presumably created by Lash, which criticized President Obama by saying, among numerous other statements, that President Obama had "[twenty-two] 22 personal servants (taxpayer funded) for his wife" and was able "to break [numerous] laws…simply because he's black." (ECF No. 45-2 at 13–15, 65–66.) According to both parties, during the 2012 Lash investigation, Margaret Mazone ("Mazone") interviewed several SRR employees including Saulsberry. (ECF No. 91 at 4.) SRR's internal investigation concluded that Saulsberry's selection for the WFR was not because of her race. (See ECF No. 61-14.)

During discovery in the instant action, Saulsberry filed a Motion to Compel the contents of the Lash Investigation. (ECF No. 91 at 1; ECF No. 29.) However, SRR admits that it never produced the Lash Investigative File to Saulsberry. SRR also admits that, although there was a

physical Lash Investigative File, it submitted written discovery responses stating that no notes or other documentary evidence existed regarding the [Lash] investigation. (ECF No. 91 at 3.) Indeed, during oral depositions, two witnesses provided information suggesting that there was, in fact, "documentary evidence which should be in hard copy of the [Lash] Investigative File." (ECF No. 91 at 3.) Saulsberry agrees that, the entire Lash File is not missing because "the only **documents remaining from the lost Lash investigative file are the documents that Mrs. Saulsberry retained and gave to Mrs. Franklin, EEO Director, as part of her internal EEO claim in September of 2013**. (ECF No. 99 at 2.) (emphasis added). After the depositions, SRR attempted to locate the Lash Investigative File, but to no avail. SRR's current position on the missing Lash Investigative File is that Stephanie Franklin, Mazone's supervisor, "checked out" the file and it ultimately could not be located. (ECF No. 91 ay 4; ECF No. 99 at 6.) Nevertheless, Ms. Franklin stated in her Affidavit that she has no recollection of receiving the file and likely lost it during an office relocation. (ECF No. 91-2 at 3 ¶ 5.) The Lash file is presently missing. Saulsberry argues that the Lash Investigative File is relevant to several of her remaining claims, while SRR claims that the file is no longer relevant to any remining claim.

## II. LEGAL STANDARD

"Questions of trial management are quintessentially the province of the district courts." *United States v. Smith*, 452 F.3d 323, 332 (4th Cir. 2006). "The purpose of a motion in limine is to allow a court to rule on evidentiary issues in advance of trial in order to avoid delay, ensure an even-handed and expeditious trial, and focus the issues the jury will consider." *United States v. Verges*, No. 1:13cr222 (JCC), 2014 WL 559573, at *2 (E.D. Va. Feb. 12, 2014). When ruling upon a motion in limine, a federal district court exercises "wide discretion." *United States v. Aramony*, 88 F.3d 1369, 1377 (4th Cir. 1996) (quoting *United States v. Heyward*, 729 F.2d 297, 301 n.2 (4th

Cir. 1984)). Nevertheless, a motion in limine "should be granted only when the evidence is clearly inadmissible on all potential grounds." *Verges*, 2014 WL 559573, at *3. *See also Fulton v. Nisbet*, C/A No. 2:15-4355-RMG, 2018 WL 565265, at *1 (D.S.C. Jan. 25, 2018).

### III. DISCUSSION

The court first addresses SRR's contention that Saulsberry should be "precluded from eliciting testimony or presenting argument to the jury regarding adverse inferences from the missing file because SRR did not willfully lose the investigative file, and the contents of the file can be gleaned through testimony of several witnesses at trial." (ECF No. 91 at 5.)

SRR would have this court to order an absolute bar to Saulsberry's ability to elicit testimony regarding the circumstances surrounding the disappearance of the Lash Investigative File because, as SRR contends, the issue of "'why' [Saulsberry] was included in the WFR is no longer relevant" to the claims before the court. (ECF No. 91 at 9.) While the court agrees that the disappearance of the Lash Investigative File is relevant to the WFR claims which are no longer before the court, the court does not necessarily agree that the Lash Investigative File is not also relevant to the claims presently before the court. Indeed, Saulsberry argues that her remaining race and retaliation claims relate to her participation in the Lash investigation. (ECF No. 99 at 12.) Moreover, Saulsberry "intends for the evidence to show at trial that but for Mrs. Saulsberry having engaged in protected activity on multiple occasions, she would have been rehired by SRR for the 2014 FLM position or the four FLM positions in 2015." (*Id*.) Saulsberry further contends that "while the Lash investigation took place in 2012, the fact that the evidence of her 'protected activity' is in the Lash File and it is missing after April 2014, just 4 months before her August 2014 interview makes it highly relevant to the issue of notice of the decisionmakers who sat on the interview panel which is an issue at trial that Mrs. Saulsberry must prove." (ECF No. 99 at 13.)

4

This court, therefore, shall not, at this time, prohibit Saulsberry from introducing evidence, or eliciting testimony regarding the Lash File and the circumstances surrounding its disappearance.

Next, the court will address SRR's argument that Saulsberry should be "precluded from seeking an adverse inference charge regarding the lost file." The court has a similar view on this issue.

Spoliation is "the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001). A court's power to sanction spoliation derives from two sources: (1) Fed. R. Civ. P. 37(e); and (2) its "inherent power ... to redress conduct 'which abuses the judicial process.'" *Id.* (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45, 111 S. Ct. 2123, 115 L. Ed.2d 27 (1991)); *see also Jenkins v. Woody*, No. 3:15CV355, 2017 WL 362475, at *12 (E.D. Va. Jan. 21, 2017); *CAT3, LLC v. Black Lineage, Inc.*, 164 F. Supp. 3d 488, 498 (S.D.N.Y. 2016).

Rule 37(e) governs the spoliation analysis for electronically stored information ("ESI"). However, by its plain terms, Rule 37(e) does not apply to **every** situation where spoliation occurs, including where the evidence lost or destroyed is not ESI—such as here, where the lost file is a hard copy file. In those situations, a court must determine the sanctions available under its inherent authority. *See Federico v. Lincoln Military Hous., LLC*, No. 2:12-CV-80, 2014 WL 7447937, at *10 (E.D. Va. Dec. 31, 2014); *see also Coale v. Metro–N. R.R. Co.*, No. 3:08-CV-01307, 2016 WL 1441790, at *4 n.7 (D. Conn. Apr. 11, 2016). For a court to impose a sanction under its inherent power, the party seeking sanctions must show: "(1) [t]he party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) [t]he destruction or loss was accompanied by a culpable state of mind; and (3) [t]he evidence that was destroyed or

altered was relevant to the claims or defenses of the party that sought the discovery." *Federico*, 2014 WL 7447937, at *6 (quoting *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 509 (D. Md. 2009).

This analysis is similar to, yet distinct from, the Rule 37(e) framework, as it asks whether the responsible party had a duty to preserve, and breached that duty by failing to take reasonable steps to preserve. *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 803 F. Supp. 2d 469, 496 (E.D. Va. 2011). Spoliation must involve more than the "negligent loss or destruction of evidence," as "the alleged destroyer must have known that the evidence was relevant to some issue in the anticipated case, and thereafter willfully engaged in conduct resulting in the evidence's loss or destruction." *Turner v. United States*, 736 F.3d 274, 282 (4th Cir. 2013). Courts have broad discretion when deciding whether to impose spoliation sanctions. *Id.* at 281 (quoting *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995)). In its discretion, and as a sanction for spoliation of evidence, the court may order an adverse inference instruction, which informs a jury that it may "draw adverse inferences from ... the loss of evidence, or the destruction of evidence," by assuming that failure to preserve was because the spoliator was aware that the evidence would have been detrimental. *Vodusek*, 71 F.3d at 156. Because such a definitive inference is not always warranted, courts have crafted various levels of adverse inference jury instructions. For example, the court may instruct the jury that "certain facts are deemed admitted and must be accepted as true"; impose a mandatory, yet rebuttable, presumption; or "permit (but ... not require) a jury to presume that the lost evidence is both relevant and favorable to the innocent party." *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.,* 685 F. Supp. 2d 456, 465 (S.D.N.Y.2010).

Here, SRR contends Saulsberry should not be allowed to make a "statement to the jury that an adverse inference should or could be drawn from the file's disappearance." (ECF No. 91 at 9.) SRR further argues that a jury instruction of an adverse inference regarding the missing Lash Investigative File is unwarranted because "contents of the Lash file are already in the record." (ECF No. 105 at 4.) However, SRR has not demonstrated that the contents of the missing Lash Investigative File would necessarily replicate, but not add to, the information provided in the record. Further, "Even if a court determines not to exclude secondary evidence, it may still permit the jury to draw unfavorable inferences against the party responsible for the loss or destruction of the original evidence." *Vodusek*, 71 F.3d at 156.

With this in mind, the court reserves the matter to be handled at the trial. An evidentiary ruling on this issue "depends on the particular content of the evidence and argument, and the context in which the party seeks to introduce it." *See Wise v. C.R. Bard, Inc.*, C/A No. 2:12-cv-01378, 2015 WL 541933, at *6 (S.D. W. Va. Feb. 10, 2015). Therefore, the court declines to substantively exclude, at this time, all references to the disappearance of the Lash Investigative File or indefinitely preclude Saulsbury from making a showing that an adverse inference instruction based on its disappearance is warranted. Moreover, SRR has not addressed or demonstrated what, if any, prejudice would result if its motion is denied. Accordingly, the court **DENIES WITHOUT PREJUDICE** SRR's Motion in Limine to Bar Plaintiff from Making Adverse Comments Regarding Defendant's Failure to Produce Certain Records (ECF No. 91).

## IV. CONCLUSION

After a careful examination of SRR's Motion in Limine to Bar Plaintiff from Making Adverse Comments Regarding Defendant's Failure to Produce Certain Records (ECF No. 91), Saulsberry's Memorandum of Law in Opposition to SRR's Motion (ECF No. 99), and the current record before the court, the court **DENIES WITH PREJUDICE** SRR's Motion in Limine to Bar Plaintiff from Making Adverse Comments Regarding Defendant's Failure to Produce Certain Records (ECF No. 91).

**IT IS SO ORDERED.**

*/s/ J. Michelle Childs*
United States District Judge

September 19, 2019
Columbia, South Carolina